# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICHOLE JENSEN, | |
| Plaintiff, | Case No. 13 C 7098 |
| v. | Judge John Robert Blakey |
| IFCO, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nichole Jensen, pursuant to Title VII of the Civil Rights Act, brings hostile work environment and retaliation claims against Defendant IFCO, Inc. ("IFCO"). Based upon the undisputed portions of the record, however, IFCO did not employ Plaintiff but rather procured her services through Crown Services, Inc. ("Crown Services"), a temporary staffing company and a former co-defendant in this lawsuit that settled. IFCO now moves for summary judgment [49], arguing that it was not Plaintiff's "employer" under Title VII and thus cannot be liable. The motion is granted.

## I. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Plaintiff. *CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Facts[1]

IFCO provides reusable plastic containers and logistics solutions to its clients. DSOF ¶ 3. Relevant here, IFCO operates a wash facility in Bolingbrook, Illinois (the "Bolingbrook Facility") where the company cleans reusable plastic containers used by manufacturers and growers. DSOF ¶¶ 3, 35, 37. The cleaning process includes scraping off stickers placed on the containers by prior users. DSOF ¶ 37. The Bolingbrook Facility operated three shifts, and, for each shift, IFCO employed 10 to 12 individuals to work in varying capacities. IFCO also contracted with temporary staffing companies to retain an additional 20 to 45 temporary laborers. DSOF ¶ 36. From January to May 2012, one of those temporary staffing companies was Crown Services. DSOF ¶ 29. Pursuant to a staffing agreement with IFCO, Crown Services recruited and assigned its employees to work in various

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto. "DSOF" refers to Defendant's statement of undisputed facts [68], with Plaintiff's responses [70]. "PSOF" refers to Plaintiff's statement of additional facts [70], with Defendant's responses [75].

positions at the Bolingbrook Facility. DSOF ¶¶ 30-31. Crown Services also provided an onsite supervisor to monitor its employees' performance. DSOF ¶ 30.

On December 15, 2011, Plaintiff applied for a job with Crown Services. DSOF ¶ 12. As part of her application, Plaintiff gave Crown Services her employment history, references and a federal income tax withholding worksheet, and she also signed Crown Services' Temporary Employment Agreement. DSOF ¶ 13. By signing the Temporary Employment Agreement, Plaintiff agreed to abide by Crown Services' Drug and Alcohol Policy and to submit to a drug test. DSOF ¶ 15. Plaintiff also acknowledged that she had received and reviewed Crown Services' Safety Policy and Guidelines and its employee guide titled, "Welcome to Crown Services, Inc." DSOF ¶¶ 17-18. The employee guide stated, among other things, that Crown Services employees should call the local Crown Services office and not the customer (here, IFCO) if they expected to report late to work or miss a day of work. DSOF ¶¶ 19-20.

Crown Services assigned Plaintiff to work as a general laborer on the second shift at the Bolingbrook Facility, and Plaintiff began work on January 27, 2012. DSOF ¶¶ 45, 48. Plaintiff had prior experience and skill working as a general laborer on production lines, and her assignment at the Bolingbrook Facility invoked that experience and those skills. DSOF ¶¶ 14, 46. Plaintiff scraped off stickers from reusable plastic containers as they exited the cleaning machines and folded the containers down. DSOF ¶ 46. Because the cleaning machines were loud, Plaintiff was required to wear protective earplugs or headphones. DSOF ¶ 44.

3

Plaintiff also wore other safety garments, including glasses, waterproof boots and a full coverage smock. DSOF ¶ 43.

Plaintiff's second shift assignment concluded on April 17, 2012, and, the next day, Crown Services reassigned Plaintiff to work on the third shift at the Bolingbrook Facility. DSOF ¶¶ 49-50. That assignment, however, was short-lived.

On April 25, 2012, Plaintiff met with Deanna Wood, Crown Services' local office manager, to request a reassignment to the first shift. DSOF ¶¶ 52-53. Plaintiff explained, among other things, that she had been sexually harassed by co-workers on the second and third shifts. Response to DSOF ¶ 52; DSOF ¶ 54. On April 27, 2012, Crown Services granted Plaintiff's request, offering her a first shift assignment at the Bolingbrook Facility. DSOF ¶ 55; Contact History Report (CROWNJENSEN 22), attached as Exhibit B to Wood Declaration. In response, Plaintiff chose not to take the offer, and she never worked at the Bolingbrook Facility again. DSOF ¶¶ 55, 59.

On April 27, 2012, Wood also notified IFCO's General Manager Dwight Burney of Plaintiff's sexual harassment allegations, DSOF ¶ 66, and an investigation by Crown Services and IFCO ensued in the following days. Among the investigative steps taken, on May 1, 2012, Kevin O'Brien, Regional Manager and Vice President of Crown Services, and Wood interviewed Plaintiff regarding her harassment allegations. DSOF ¶ 60. Following the interview and also on May 1, 2012, Burney emailed IFCO's Senior Human Resources Manager, Randy Elmore, about the interview. DSOF ¶ 67, citing 5/1/12 Email Chain (JENSEN 000006-08).

Elmore responded the same day, instructing Burney to: (1) document the incident; (2) review the anti-harassment policy with all workers at the facility; and (3) await further information from Crown Services. DSOF ¶ 67, citing 5/1/12 Email Chain (JENSEN 000006-08). On May 3, 2012, Crown Services closed its investigation due to insufficient evidence corroborating any harassment. DSOF ¶ 69.

Also around the April to May 2012 timeframe, Wood called Plaintiff to offer her another assignment with Crown Services but for a different client. DSOF ¶¶ 56-57. Plaintiff, however, never returned Wood's call. DSOF ¶¶ 56-57. Crown Services never formally terminated Plaintiff, but the company has not since offered her any other assignments. DSOF ¶ 57.

**III. Analysis**

Pursuant to Title VII of the Civil Rights Act, Plaintiff brings hostile work environment and retaliation claims against IFCO. Under Title VII, it is unlawful for an "employer" to discriminate against any individual with respect to, among other things, her terms, conditions or privileges of employment because of her sex. 42 U.S.C. § 2000e-2(a)(1). Title VII defines "employer" as:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person.

42 U.S.C. § 2000e(b). An "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f).

In order to bring a Title VII claim against Defendant (and thus before this Court needs to address the potential merits of any such claim), Plaintiff first must

prove the existence of an employment relationship. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). The existence of an employment relationship is a question of law amenable to resolution at summary judgment. *Kerr v. WGN Continental Broadcasting Co.*, No. 01-7196, 2002 WL 1477629, at *3 (N.D. Ill. July 9, 2002). Here, Plaintiff was not a direct employee of IFCO; rather, Plaintiff was an employee of Crown Services, a temporary staffing company retained by IFCO. DSOF ¶¶ 5, 27, 31. Under certain circumstances, however, Plaintiff can have multiple employers for the purpose of Title VII liability and thus can bring a claim against a company that is not her direct employer, provided she makes the requisite showing. *Love*, 779 F.3d at 701.

The five-factor test for determining when an employment relationship exists was first developed in *Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991). The five factors are: (1) the extent of the putative employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the putative employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment. *Knight*, 950 F.2d at 378-79. This Court proceeds by examining each *Knight* factor, and concludes that they collectively establish that no employment relationship exists here such that IFCO may be liable under Title VII.

The first, and "most important," factor is the extent to which the putative employer (here IFCO) controlled or supervised Plaintiff as the alleged employee.

6

*Love*, 779 F.3d at 703; *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996); *Knight*, 950 F.2d at 378. When control is examined, the "key powers" are hiring and firing, but this Court also will examine the extent to which IFCO provided direction with respect to the scheduling and performance of Plaintiff's work at the Bolingbrook Facility. *Love*, 779 F.3d at 703.

Here, Crown Services controlled Plaintiff. Plaintiff applied to work at Crown Services and agreed to the company's conditions for employment, and Crown Services hired her. DSOF ¶¶ 5-6, 12-13, 15-18, 27, 31, 45. Plaintiff was not employed by IFCO. DSOF ¶¶ 5, 31, 45, 47. When Crown Services assigned Plaintiff to work at IFCO, it was Crown Services—and not IFCO—that:

1. gave Plaintiff her work assignments;
2. made scheduling changes;
3. recorded her hours worked;
4. supervised her performance;
5. served as Plaintiff's point of contact for work-related problems; and
6. had the power to discipline her.

DSOF ¶¶ 7-8, 19-21, 23, 30, 32, 49-50, 52-53. The division of responsibility between IFCO and Crown Services was memorialized by their staffing agreement. DSOF ¶ 33.

Regarding scheduling changes (the second bullet point), Crown Services' employee guidelines instructed Plaintiff to inform Crown Services only—and thus not its clients—of scheduling changes. DSOF ¶¶ 19-20. Nonetheless, Plaintiff

7

responds, citing only to her own deposition testimony, that, in practice, she texted Dave Chandra, her "line leader" and an IFCO employee, when she would come in late to work or miss work. Response to DSOF ¶ 7. Plaintiff testified:

> Q. You mentioned that you sent text messages with Dave, right?
>
> A. Yes. Well, we just sent messages saying, you know, if we were coming in or not, like, if we were going to be late. And he would be like "Okay".

This limited control, if it can even be called that, is far too weak to create any employment relationship in light of the overall record presented here. Plaintiff, moreover, has not shown that her texts to Chandra were anything more than a courtesy. There is no evidence, for example, that Chandra asked for the texts or could discipline Plaintiff if she failed to notify him of a scheduling change.

Plaintiff next argues, again citing only to her deposition testimony, that IFCO and not Crown Services terminated her employment at the Bolingbrook Facility. [71] at 7; Response to DSOF ¶ 8. Plaintiff testified that, in the context of her April 25, 2012 meeting with Wood about a reassignment and follow-up discussions, Wood said IFCO had let her go:

> Q. As best as you can recall? And why did you want to work that shift?
>
> A. Because it kept me from being involved with the people on second shift.
>
> Q. And as far as when you discussed this with Ms. Woods, do you recall what she said to you?
>
> A. She was putting me on first shift right away, and then she called to talk to IFCO. And she said that they put it on hold, they don't want me, that I can't come until the investigation is over. They were doing an investigation, and then she called me and told me that I wasn't welcome back, that they let me go.

8

Jensen Dep. at 322, quoted at Response to DSOF ¶ 8. Far from testifying that IFCO terminated Plaintiff, Wood, at her deposition, answered "No" when asked: "is it fair to say that Nichole wanted to continue working at IFCO and IFCO decided they didn't want her to continue working?" Wood Dep. at 41-42.

Plaintiff's deposition testimony cannot create a genuine issue of material fact for two reasons. First, Plaintiff cannot create a basis for denying summary judgment simply by relying upon inadmissible, hearsay evidence (what Wood told her) to establish that IFCO was, in fact, the one that terminated her. Fed. R. Civ. P. 56(c); Fed. R. Evid. 801(c); *MMG Financial Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").[2]

Second, even if Plaintiff's testimony about what Wood told her was admissible, and it is not, summary judgment nonetheless is warranted here. The Seventh Circuit in *Love* affirmed summary judgment under less compelling circumstances than here. Unlike here, it was undisputed in *Love* that the putative employer (a general contractor) permanently removed the alleged employee (who worked for the sub-subcontractor) from the construction site—a *de facto* termination—over the sub-subcontractor's objections. 779 F.3d 703-04. While that fact weighed in favor of finding an employment relationship, the Seventh Circuit

---

[2] The purported declarant Wood is employed by Crown Services and not IFCO, *see* Wood Decl. ¶ 3, so what Wood might have told Plaintiff does not qualify as a non-hearsay statement under Federal Rule of Evidence 801(d)(2) that can be used against IFCO. In the pleadings, Plaintiff fails to identify any other hearsay exception that might render this testimony admissible.

found that the evidence showing an absence of control by the general contractor outweighed it. *Id.* The putative employer, like IFCO here, did not hire the alleged employee, set his hours or directly supervise him. *Id.* Nor did the putative employer jeopardize the alleged employee's employment with the sub-subcontractor or his placement at the sub-subcontractor's other projects. *Id.* at 703. To that point, here, Crown Services offered Plaintiff a position with another client after she stopped working at IFCO's Bolingbrook Facility. DSOF ¶ 56.

Plaintiff does not dispute that the remaining *Knight* factors also demonstrate that no employment relationship exists here. Nonetheless, for completeness, this Court analyzes them and finds that they support this Court's decision to grant IFCO's summary judgment motion.

The second factor in evaluating an indirect employment relationship is the type of occupation and nature of the skills required for the position in question, "including whether skills are obtained in the workplace." *Knight*, 950 F.2d at 378. This factor also weighs against finding an employment relationship because Plaintiff did not acquire any new skills from working on the assembly line at the Bolingbrook Facility. Rather, Plaintiff came into the Bolingbrook Facility with that experience and those skills. DSOF ¶ 14. Likewise, in *Wilcox v. Allstate Corp.*, No. 11-814, 2012 WL 6569729, at *12 (N.D. Ill. Dec. 17, 2012), the Court found that the employee's prior experience, which, as here, showed that she did not learn anything new from the putative employer, also weighed against finding an employment relationship under the second *Knight* factor. Moreover, Plaintiff was free to leave

her assignment at any time and use her skills to work for another company, which she did. DSOF ¶ 59. Plaintiff did receive some safety training from IFCO, *see* DSOF ¶ 42, but, as in *Love*, 779 F.3d at 704, safety training alone is insufficient to establish an employment relationship.

The third factor relates to whether the putative employer was responsible for the costs of operation, including the costs of "equipment, supplies, fees, licenses, workplace, and maintenance of operations." *Knight*, 950 F.2d at 378. This factor does not carry much weight in this case. On the one hand, IFCO acknowledges that it provided Plaintiff with the office space and some safety equipment, such as safety glasses and smocks. But, as in both *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 550 (7th Cir. 2002), and *Wilcox*, 2012 WL 6569729, at *12, where the putative employers also provided office space and equipment to the alleged employee, those facts do not by themselves establish an employment relationship. Moreover, Crown Services and other temporary staffing companies provided most of the employees at the Bolingbrook Facility in 2012, and Crown Services employees working at the Bolingbrook Facility brought some of their own safety equipment, such as boots. DSOF ¶¶ 36, 43-44. Thus the third *Knight* factor does not strongly support either party.

The fourth factor, which considers whether the putative employer was responsible for providing payment and benefits, *Knight*, 950 F.2d at 378-79, also cuts against finding an employment relationship. Crown Services—and not IFCO—paid Plaintiff's wages based on the hours she submitted to Crown Services. DSOF

11

¶¶ 7, 24, 32. Crown Services—and not IFCO—issued Plaintiff her tax return forms. DSOF ¶ 25. And Crown Services—and not IFCO—gave Plaintiff employee benefits, including paid vacation, health insurance and unemployment insurance. DSOF ¶ 26.

These factors are strong indicia of an employment relationship with Crown Services and not IFCO, as shown by *Kerr*, 2002 WL 1477629, at *5-6. *Kerr* looked to salary and tax arrangements when determining at summary judgment that one defendant company, but not the other, was an "employer" for purposes of Title VII. Likewise, the Seventh Circuit emphasized the significance of the putative employer's tax treatment of the employee in *Equal Employment Opportunity Commission v. North Knox School Corp.*, 154 F.3d 744, 750 (7th Cir. 1998).

The final factor, which examines the length of the employee's job commitment and the expectations of the parties, *Knight*, 950 F.2d at 379, also weighs against finding an employment relationship here. Temporary and non-exclusive assignments do not establish an employment relationship. *Wilcox*, 2012 WL 6569729, at *12. Here, Crown Services' assignments to Plaintiff were temporary, indeed, Plaintiff worked at the Bolingbrook Facility for just four months, and Plaintiff understood that Crown Services could reassign her to work at a different Crown Services client at any time. DSOF ¶¶ 28, 30. Plaintiff also acknowledged that she was a temporary laborer and that Crown Services did not, and could not, guarantee the availability or duration of any particular assignment. DSOF ¶ 28.

Having found that four of the *Knight* factors weigh against finding an employment relationship and the last factor is neutral, this Court concludes that IFCO was not Plaintiff's "employer" under Title VII. Summary judgment for IFCO thus is warranted, and, having reached that conclusion, this Court need not consider IFCO's alternative bases for summary judgment.

## IV. Conclusion

Defendant's motion for summary judgment [66] is granted. Civil case terminated.

Dated: October 6, 2015

                                        Entered:

                                        _____
                                        John Robert Blakey
                                        United States District Judge